**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | |
|---|---|
| Richard H. Hammond, | ) |
|         Plaintiff, | ) **ORDER GRANTING PLAINTIFF'S** |
| | ) **MOTION FOR SUMMARY** |
| | ) **JUDGMENT AND DENYING** |
| vs. | ) **DEFENDANT'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| United States Office of Personnel | ) |
| Management, | ) Case No. 1:10-cv-094 |
| | ) |
|         Defendant. | ) |

Before the Court are cross-motions for summary judgment filed on April 6, 2011 and June 6, 2011. See Docket Nos. 17 and 19. The Plaintiff filed a response in opposition to the Defendant's motion on June 6, 2011. See Docket No. 22. The Defendant filed a response in opposition to the Plaintiff's motion and a reply brief on July 11, 2011. See Docket Nos. 23 and 24. For the reasons explained below, the Plaintiff's motion is granted and the Defendant's motion is denied.

**I.     BACKGROUND**

The plaintiff, Richard H. Hammond, is a retired federal employee covered by the Federal Employee Health Benefits Program. The United States Supreme Court has explained:

> The Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U.S.C. § 8901 et seq. (2000 ed. and Supp. III), establishes a comprehensive program of health insurance for federal employees. The Act authorizes the Office of Personnel Management (OPM) to contract with private carriers to offer federal employees an array of health-care plans. See § 8902(a) (2000 ed.). Largest of the plans for which OPM has contracted, annually since 1960, is the Blue Cross Blue Shield Service Benefit Plan (Plan), administered by local Blue Cross Blue Shield companies.

Empire HealthChoice Assur., Inc. v. McVeigh, 547 U.S. 677, 682 (2006). Richard Hammond is covered by the Blue Cross and Blue Shield Benefit Service Plan ("Blue Cross/Blue Shield").

Richard Hammond's son, Justin Hammond, is covered by Richard Hammond's health insurance policy and by Medicare.

Justin Hammond was admitted to the Malibu Horizon residential treatment center in Malibu, California, for treatment of drug dependency and bipolar disorder on May 13, 2007. He was discharged on June 10, 2007. Malibu Horizon is licensed as "an adult residential alcohol and/or drug abuse/recovery or treatment facility." See Docket No. 9-7, p. 8. Justin Hammond's treatment at Malibu Horizon cost $32,648.00. Medicare denied coverage for Justin Hammond's treatment at Malibu Horizon because the facility is not a participating provider under Medicare. See Docket No. 9-1, p. 40.

Blue Cross/Blue Shield also denied the claim for coverage. Carol M., a customer care representative for Blue Cross/Blue Shield, explained the decision in a letter to Richard Hammond on June 16, 2008:

> It has been determined that based on the information that has been provided, the physician's progress notes are not daily notes and some of the notes are illegible. It cannot be determined that the patient was suicidal or homicidal. The patient was described as being anxious and experiencing [an] increase in auditory hallucinations. The patient was participating in treatment. There were no co-morbid factors that require the level of care provided. The patient appears to have sufficient social support and motivation to participate in a less intensive treatment. The patient's symptoms do not appear to meet the criteria guideline provision of the benefit plan for this level of care during the period reviewed.

See Docket No. 1-6.

Richard Hammond requested that the denial of the claim be reconsidered in letters dated June 30, 2008 and August 14, 2008. See Docket Nos. 1-8 and 1-9. Upon reconsideration of the claim, Blue Cross/Blue Shield noted that Malibu Horizons is licensed as a residential treatment center. Page 82 of the Service Benefit Plan brochure ("the brochure") provides that "[s]ervices performed

or billed by schools, residential treatment centers, halfway houses, or members of their staffs" are not covered.  See Docket No. 9-1, p. 2.  The brochure also provides that members pay a $400 copayment and 40% of the Plan allowance for "room and board and ancillary charges for confinement in a treatment facility for rehabilitative treatment of alcoholism or substance abuse." See Docket No. 9-1, p. 2.  Upon reconsideration, Blue Cross/Blue Shield again denied coverage and provided the following justification:

> The patient is a 29 year old male patient with a history of Bipolar Disorder and Polysubstance Dependence.  The patient was admitted into the RTC (Residential Treatment Center) LOC (Level of Care) at the Horizon Malibu Facility on 5/13/2007 and was discharged on 6/10/2007.
>
> However, the clinical notes provided are for the summer of 2005.  There are no notes found in this chart that correspond to the LOS in question.  On 7/27/2007, Dr. Mohammed, MC, writes in this patient's Initial Psychiatric MSE (Mental Status Examination): "Patient appears stated age, illegible, anxiety, good eye contact, cooperative, depressed mood, decreased attention and concentration, no acute psychiatric symptoms, no suicidality or homicidality, illegible, poor to fair judgment."  There is no notation of any type of acute intoxication and/or withdrawal symptomatology, or, of any type of acute medical decompensations or problems needing 24 hour nursing care, or, for the patient needing 24 hour supervision for any reason.
>
> . . .
>
> 24 hour care in a structured setting is needed because the patient has cognitive deficits, and/or a personality disorder and needs to have his behavior shaped, he cannot control his impulses without 24 hour care, has a limited readiness to change despite consequences, is a danger to himself or others, is in danger of relapse without this 24 hour structure, has a moderately high risk environment, lacks social support or will be victimized without 24 hour care.
>
> Dr. Mohammed did not document any of these elements in his Initial Psychiatric Evaluation and the MSE as well, and therefore, the medical necessity criteria, as discussed by the American Society of Addiction Medicine, for the RTC LOC were not met and the stay is considered not medically necessary.

See Docket No. 9-9, pp. 10-11.

Jennifer Childs-Biddle, a Grievance/Appeals representative, communicated Blue Cross/Blue Shield's decision to Richard Hammond by letter on November 17, 2008. Childs-Biddle explained, "[P]age 64 [of the brochure] states admission to non-covered facilities, such as nursing homes, extended care facilities, schools and *residential treatment centers* are not covered." See Docket No. 9-1, p. 19 (emphasis in original). She noted that Blue Cross/Blue Shield had not received all of Justin Hammond's medical records and stated, "Since all information was not received and the information received was not sufficient to determine these services were medically necessary the Federal Employee Program is unable to reconsider your claim at this time." See Docket No. 9-1, p. 20. Childs-Biddle also informed Richard Hammond that he could appeal the denial of his claim to the Office of Personnel Management ("OPM") by sending a written request within 90 days.

Richard Hammond responded by letter on December 3, 2008. Richard Hammond stated that Blue Cross/Blue Shield made the following errors in its reconsideration of the claim:

1. Malibu is a dual diagnosis facility.

2. The intake officials at Malibu Horizon did contact Blue Cross and obtained the necessary standard pre-authorization before admitting Justin. Once Blue Cross has pre-authorized treatment, Blue Cross no longer has the option of not paying the claim by alleging that the treatment is "not medically necessary."

3. The records for the dates of service of May 31, 2007 to June 10, 2007 were sent to Blue Cross initially. Several months later Blue cross requested the older records and at that time the records from 2005 were sent. During the processing of this claim I have had to deal with numerous Blue Cross claims persons at numerous locations. You need to find the 2007 records that you have.

4. The medical records from Malibu Horizon should contain both Dr. Mohammad's and Dr. Weyland's records. If you need a letter from either or both doctors, please let me know or you may contact them directly.

See Docket No. 9-9, p. 17. Childs-Biddle replied in a letter that appears to be erroneously dated November 17, 2008. She explained that Blue Cross/Blue Shield had no record of pre-authorization

4

for Justin Hammond's treatment and that Blue Cross/Blue Shield had reviewed all of the medical records it was provided.

Richard Hammond appealed Blue Cross/Blue Shield's decision to OPM on January 20, 2009. Hammond asserted that Blue Cross/Blue Shield had improperly determined that Justin Hammond's stay at Malibu Horizon was not medically necessary, that Malibu Horizon had received pre-authorization, that Blue Cross/Blue Shield had received all of the necessary medical records, and that Malibu Horizon is licensed as a "dual-diagnosis facility" and not a "residential treatment facility." See Docket No. 9-1, pp. 14-17.

On February 17, 2009, Blue Cross/Blue Shield provided an "Explanation of Denial Report" to OPM. See Docket No. 9-1, pp. 8-12. Blue Cross/Blue Shield described the pertinent portions of the brochure as follows:

> Member was referred to pages 62-64 of the 2007 Service Benefit Plan brochure (SBP hereafter) that outlines the facility benefits for inpatient hospital services, which states for non-member facilities, the member is liable for a $300 per admission co-payment for unlimited days, plus 30% of the Plan allowance, and any remaining balance after the Plan's payment. Page 64 of the brochure also advises admission to non-covered facilities, such as nursing homes, extended care facilities, schools and residential treatment centers are not covered. Page 82 of the 2007 SBP that outlines the facility benefits for inpatient mental health services related to substance abuse, which states the member is liable for a $400 co-payment per day plus any difference between our Plan allowance and the billed amount, and all charges after 28 days per lifetime. Page 82 also advises residential treatment centers are not covered. Member was referred to page 116 of the 2007 SBP that provides the definition of Medical Necessity; pages 108-109 of the SBP that advises how the Plan provides secondary benefits when Medicare is primary; and page 19 of the brochure that advises non-covered services do not accumulate toward your $6000 out-of-pocket maximum for non-participating providers.

See Docket No. 9-1, p. 8.

Blue Cross/Blue Shield also responded to the concerns Richard Hammond raised in his appeal. Blue Cross/Blue Shield stated that it had no record of any pre-certification or authorization

of Justin Hammond's treatment. Blue Cross/Blue Shield explained that it reviewed Malibu Horizon's licensure and "[t]here are no indications on the licensure that Malibu Horizon Corp is a dual licensed facility." See Docket No. 9-1, p. 11. Blue Cross/Blue Shield also noted that "there is documentation of a call in August of 2007 where Malibu Horizon Corp. contacted the Plan and was advised there were no benefits for an out of network Residential Treatment Center." See Docket No. 9-1, p. 11. Blue Cross/Blue Shield maintained its position that Justin Hammond's treatment at Malibu Horizon was not covered by Richard Hammond's health insurance policy.

On March 27, 2009, Dee T. Harrell, Insurance Benefits Claims Examiner for OPM, informed Richard Hammond by letter that OPM had denied his appeal. Harrell explained:

> Our review process examines the Plan's actions to assure that the Plan administered benefits according to the contract guidelines. The Plan's brochure is the contractual statement of benefits for the BCBS Service Benefit Plan. As indicated on Page 82 of the 2007 Service Benefit Plan brochure under, ***Non-preferred (Out-of-Network) benefits it says,*** *residential treatment centers are not covered.* Therefore, because the services that Justin received were provided in a Residential Treatment Center, we must concur with the Plan.

See Docket No. 9-1, p. 3 (emphasis in original). Harrell also said there was no evidence that Justin Hammond's treatment was pre-certified or authorized, and that non-covered services, such as treatment at a residential treatment center, do not count towards the $6,000.00 maximum out-of-pocket costs. Finally, Harrell informed Richard Hammond, "[Y]ou have the right to litigate against the Office of Personnel Management in Federal court if you are not satisfied with the outcome of your appeal." See Docket No. 9-1, p. 4.

On December 28, 2010, Richard Hammond filed a complaint requesting "that the Court order OPM to direct Anthem Blue Cross to pay the claim in the amount of $32,648.00 to the Plaintiff." See Docket No. 1. On April 6, 2011, OPM filed a motion for summary judgment. See Docket No.

6

17. OPM contends there are no genuine issues of material fact and the administrative record reveals that OPM's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. On June 6, 2011, Richard Hammond filed a response in opposition to OPM's motion and a cross-motion for summary judgment. See Docket Nos. 19 and 22. Hammond contends the administrative record is incomplete, the contractual terms are ambiguous, Blue Cross/Blue Shield and OPM did not act in good faith, and Malibu Horizon is a "dual diagnosis facility."

## II.  STANDARD OF REVIEW

Initially, the Court notes that Richard Hammond is appearing pro se. Pro se litigants are held to lesser pleading standards than other parties and pro se complaints are to be liberally construed. Whitson v. Stone Cnty. Jail, 602 F.3d 920, 922 n.1 (8th Cir. 2010).

An appeal from a decision by the Office of Personnel Management is controlled by 5 C.F.R. § 890.107, which states, in pertinent part:

> (c) Federal Employees Health Benefits (FEHB) carriers resolve FEHB claims under authority of Federal statute (5 U.S.C. chapter 89). A covered individual may seek judicial review of OPM's final action on the denial of a health benefits claim. A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors. The recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute.
>
> (d) An action under paragraph (c) of this section to recover on a claim for health benefits:
>
> . . .
>
> (3) Will be limited to the record that was before OPM when it rendered its decision affirming the carrier's denial of benefits.

5 C.F.R. § 890.107.

The Administrative Procedure Act provides the standard of review for federal district courts reviewing the decisions of federal agencies:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>
> . . .
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> . . .
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706(2)(A).

In Nesseim v. Mail Handlers Benefit Plan, 995 F.2d 804 (8th Cir. 1993), the Eighth Circuit Court of Appeals held that OPM decisions are to be reviewed "under the section 706(2)(A) arbitrary and capricious standard." Nesseim, 995 F.2d at 807. The Court must conduct a "searching and careful" review of the administrative record to determine whether OPM's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." South Dakota v. Ubbelohde, 330 F.3d 1014, 1031 (8th Cir. 2003) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)); 5 U.S.C. § 702(2)(A). A court is not allowed to substitute its judgment for that of the administrative agency. Bowman Transp., Inc. V. Arkansas-Best Freight Sys., 419 U.S. 281, 285 (1974) (citing Citizens to Preserve Overton Park, Inc., 401 U.S. at 416). In addition, the Court is not to provide a reason for the agency's decision. "The OPM's decision

must stand or fall on the propriety of the reasons given." Nesseim, 995 F.2d at 807 (citing Camp v. Pitts, 411 U.S. 138, 143 (1973) (per curiam)).

### III. LEGAL DISCUSSION

The Office of Personnel Management ("OPM") contends that its decision to deny coverage for Justin Hammond's treatment at Malibu Horizon is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. After reviewing Blue Cross/Blue Shield's denial of coverage for Justin Hammond's treatment, OPM concluded, "[B]ecause the services that Justin received were provided in a Residential Treatment Center, we must concur with the Plan." See Docket No. 9-1, p. 3. Richard Hammond contends that Malibu Horizon is actually licensed as a "dual diagnosis facility" and not a "residential treatment center." He further contends that OPM's interpretation of the brochure is arbitrary, capricious, and not in accordance with law because Malibu Horizon should be considered a "treatment facility for rehabilitative treatment of alcoholism or substance abuse." See Docket No. 9-1, p. 2.

Page 82 of the Blue Cross/Blue Shield Service Plan brochure provides, "Inpatient care to treat substance abuse includes room and board and ancillary charges for confinements in a <u>treatment facility for rehabilitative treatment of alcoholism or substance abuse</u>" are covered and the member pays a $400 copayment per day plus 40% of the Plan allowance. See Docket No. 9-1, p. 2 (emphasis added). Page 82 also explains that "[s]ervices performed or billed by schools, <u>residential treatment centers</u>, halfway houses, or members of their staffs" are "[n]ot covered." See Docket No. 9-1, p. 2 (emphasis added). Neither the Blue Cross/Blue Shield brochure nor the administrative record

9

include any definitions as to what constitutes a "treatment facility for rehabilitative treatment of alcoholism or substance abuse" or a "residential treatment center."

Malibu Horizon's license states that Malibu Horizon is licensed "to operate and maintain an adult residential alcohol and/or drug abuse/recovery or treatment facility." See Docket No. 9-7, p. 8. OPM summarily concluded that Malibu Horizon is a "residential treatment center," rather than a "treatment facility for rehabilitative treatment of alcoholism or substance abuse" and, as a result, there is no coverage. The Court has carefully reviewed the entire administrative record. The administrative record does not reveal any meaningful distinction between the terms "residential treatment center" and a "treatment facility for rehabilitative treatment of alcoholism or substance abuse." The Court finds the two terms to be vague and ambiguous at best. "Where one party drafts and controls the contractual terms of a contract" it is appropriate "to construe any ambiguity in such contract against the drafter." Porous Media Corp. v. Midland Brake, Inc., 220 F.3d 954, 960 n.8 (8th Cir. 2000) (citing Current Tech. Concepts v. Irie Enterprises, Inc., 530 N.W.2d 539, 543 (Minn. 1995)). In addition, the general rule of contract construction is to construe ambiguous insurance policies in favor of providing coverage. Lindsay v. Safeco Ins. Co. of Am., 447 F.3d 615, 619 (8th Cir. 2006) (citing Am. Econ. Ins. Co. v. Otte, 869 S.W.2d 179, 181 (Mo. 1993)).

The Court finds that OPM's decision to deny coverage because Malibu Horizon is considered to be a "residential treatment center," rather than a "treatment facility for rehabilitative treatment of alcoholism or substance abuse" was arbitrary and capricious. The terms are neither defined in the Blue Cross/Blue Shield Benefit Service Plan brochure nor anywhere else in the administrative record. The terms are vague and ambiguous, and arguably synonymous. The administrative record does not reveal any reasoned analysis on the part of Blue Cross/Blue Shield or OPM leading to the

conclusion that Malibu Horizon is a "residential treatment center" and therefore no coverage exists. A decision by Blue Cross/Blue Shield or OPM to classify Malibu Horizon as a "treatment facility for rehabilitative treatment of alcoholism or substance abuse" and provide coverage would have been equally reasonable. Construing the insurance policy and brochure against Blue Cross/Blue Shield and in favor of coverage, the Court finds that Malibu Horizon is a "treatment facility for rehabilitative treatment of alcoholism or substance abuse" and Justin Hammond's treatment for drug dependency and mental health issues at Malibu Horizon is covered by Richard Hammond's policy.

## IV. CONCLUSION

The Court has carefully considered the parties' briefs, the entire record, and relevant case law. The Court finds that OPM's decision to affirm Blue Cross/Blue Shield's denial of coverage was arbitrary and capricious. Accordingly, the Court reverses OPM's decision, the Defendant's motion for summary judgment (Docket No. 17) is **DENIED** and the Plaintiff's motion for summary judgment (Docket No. 19) is **GRANTED**. The Court **ORDERS** OPM to direct Blue Cross/Blue Shield to pay the Plaintiff's claim and provide coverage in accordance with the policy and brochure.

**IT IS SO ORDERED.**

Dated this 15th day of November, 2011.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court